IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE LIVING LEGENDS AWARDS *
FOR SERVICE TO HUMANITY, INC., *
　　　　　　　　　　　　　　　　　　*
　　　Plaintiff, *
　　　　　　　　　　　　　　　　　　*
　v.　　　　　　　　　　　　　　　　Civil Action No. PX 16-3094
　　　　　　　　　　　　　　　　　　*
HUMAN SYMPHONY FOUNDATION, INC., *
*et al.*,
　　　　　　　　　　　　　　　　　　*
　　　Defendants.
　　　　　　　　　　　　　　　******

**MEMORANDUM OPINION**

This Order addresses the Motion for Default Judgment, ECF No. 20, filed by Plaintiff The Living Legends Awards For Service to Humanity, Inc. ("Plaintiff"). Defendants Human Symphony Foundation, Inc. and Mark Williams ("Defendants") have not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2.a. Pursuant to Local Rule 105.6, a hearing is not necessary. For the reasons stated herein, Plaintiff's Motion for Default Judgment is granted in part and denied in part.

### I.　　BACKGROUND

In 2006, Doreen A.K. Hines ("Hines"), while serving as Minister of Music of the Emmanuel Brinklow Seventh-day Adventist Church ("The Church") hired Defendant Mark Williams ("Williams") to be the choir director. *See* ECF No. 1 at 3. Williams helped Hines to start a new Black History month event, marketed as *The Living Legends Awards for Service to Humanity*. *See* ECF No. 1 at 3. In 2010, Hines and Williams formed the Human Symphony

1

organization. *Id.* Human Symphony was the named sponsor of subsequent programs promoted under the title *The Living Legends Awards for Service to Humanity*. *Id.*

Hines served as CEO of Human Symphony until 2015 when she resigned because of internal disagreements regarding the direction of the Human Symphony organization. *See* ECF No. 1 at 4. Upon her resignation, Hines informed Williams that she would obtain sponsorship for future *The Living Legends Awards for Service to Humanity* programming through the Church. In November 2015, acting as the Director of *The Living Legends Awards for Service to Humanity*, Hines incorporated the Plaintiff-organization in the State of Maryland, *see* ECF No. 2-2, registered the Plaintiff as a 501(c)(3) corporation, *see* ECF No. 2-3, and became its Director in November 2015, *see* ECF No. 1 at 4. In August 2016, Plaintiff was issued a certificate granting a trademark designation for the name "The Living Legends Awards for Service to Humanity, Inc." by the U.S. Patent and Trademark Office ("USPTO"). *See* ECF No. 1 at 4.

Plaintiff held its 11th Annual *Living Legends Awards for Service to Humanity* ceremony on February 27, 2016. In July 2016, Plaintiff learned that Defendants were advertising a September 10, 2016 event named "The Living Legends Awards for Service to Humanity," and soliciting funding for this event from shared donors. *See* ECF No. 1 at 5; ECF No. 2-8. Defendants also used nearly identical artwork, graphics, font style and layout as compared to Plaintiff's promotional material. Accordingly, Plaintiff sent a "cease and desist" letter to the Defendants on July 25, 2016, informing Defendants that *The Living Legends Awards for Service for Humanity* was a legally protected name, the continued use of which is prohibited. *See* ECF No. 2-5. Nonetheless, Defendants continued to use the Plaintiff's mark to solicit donors and advertise their event. *Id.*; ECF No. 2-6; ECF No. 2-8.

On September 9, 2016, Plaintiff filed its complaint alleging trademark infringement under 15 U.S.C. § 1125(a), section 43(a) of the Lanham Act (Count I), vicarious infringement by Williams (Count II), and unfair or deceptive trade practices under Maryland Commercial Law § 13-301 against all Defendants (Count III). At the same time, Plaintiff also moved *ex parte* for the issuance of a temporary restraining order (TRO) and preliminary injunction. *See* ECF No. 8. After a hearing, the Court granted the TRO which required the Defendant to remove immediately all references to *The Living Legends Awards for Service to Humanity* from Defendants' advertisements and event materials. *Id.* Thereafter, and in violation of the Court's order, Defendants continued to use *The Living Legends Awards for Service to Humanity* name. *See* ECF No. 20 at 2.

Defendants were properly served on September 8 and 10, 2016. At no point has counsel entered an appearance for Defendant, and no answer or responsive pleading has been filed. On November 16, 2016, the Clerk issued an Order of Default pursuant to Rule 55 of the Federal Rules of Civil Procedure. On May 2, 2017, Plaintiff moved for default judgment. *See* ECF No. 20 at 2.

## II. DISCUSSION

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments. A default judgment may be entered "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear. Fed. R. Civ. P. 55(b)(1). For "all other cases," in which the sum is neither certain nor ascertainable through computation, Rule 55(b)(2) provides: "[T]he party must apply to the court for a default judgment . . . . The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B)

3

determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." The entry of default judgment is a matter within the discretion of the Court. *SEC v. Lawbaugh*, 359 F. Supp.2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). Although "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *Disney Enters. v. Delane*, 446 F. Supp.2d 402, 405 (D. Md. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.' " *Id.* (quoting *Lawbaugh*, 359 F. Supp. at 421). It is within the Court's discretion to grant default judgment when a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F.Supp.2d at 405–06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

When considering a motion for default judgment, the Court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. Fed. R. Civ. P. 8(b)(6); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). It remains, however, "for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." *Agora Fin., LLC v.*

*Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010); 10A Charles Alan Wright *et al.*, Fed. Prac. and Proc. Civ. § 2688.1 (4th ed. 2017) ("[L]iability is not deemed established simply because of the default and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the Court finds "liability is established, [it] must then determine the appropriate amount of damages." *Agora Fin.*, 725 F. Supp. 2d at 484 (citing *Ryan*, 253 F.3d at 780–81). This is so because "an allegation 'relating to the amount of damages' is not deemed admitted based on a defendant's failure to deny in a required responsive pleading." *Hartford Fin. Servs. Grp. Inc. v. Carl J. Meil, Jr., Inc.*, No. WDQ–10–2720, 2011 WL 1743177, at *7 (D. Md. May 5, 2011) (quoting Fed. R. Civ. P. 8(b)(6)); *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, LLC*, No. DKC–08–2805, 2009 WL 2982951, at *1 (D. Md. Sept.14, 2009) ("Upon default, the well-plead allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Int'l Painters & Allied Trades Indus. Pension Fund v. Metro Glass & Mirror, Inc.*, No. ELH–11–2389, 2012 WL 893262, at *2 (D. Md. Mar.14, 2012) ("The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations."). Simply put, the Court must make two determinations. First, the Court must decide "whether the unchallenged facts in plaintiff['s] complaint constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 49, 494 (D. Md. 2010). Second, if the Court finds liability is established, it must "make an independent determination regarding the appropriate amount of damages." *Id.*

### A. Liability

#### 1. Count I: Lanham Act, 15 U.S.C. § 1125(a)

To prevail on its trademark infringement claim, Plaintiff must prove that: (1) Plaintiff owns a valid mark, (2) Defendant(s) "used the mark in commerce and without . . . authorization," (3) Defendant(s) "used the mark (or an imitation of it) in . . . the sale, offering for sale, distribution or advertising of goods or services," and (4) the Defendant's use of the mark "is likely to confuse consumers." *See Basile Baumann Prost Cole & Assocs. Inc. v. BBP & Assocs. LLC*, No. WDQ–11–2478, 2012 WL 2426132, at *8 (D. Md. June 19, 2012) (stating elements of Lanham Act claim) (quoting *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012)).

Plaintiff has successfully alleged all elements of trademark infringement. First, Plaintiff has established that it owns a valid and incontestable mark. Federal registration is *prima facie* evidence that a mark is valid. *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC*, 958 F.Supp.2d 588, 594 (D. Md. 2013). The USPTO issued the Plaintiff a certificate granting the designation for the name *The Living Legends Awards for Service to Humanity, Inc*. on August 16, 2016. *See* ECF No. 2-4.

Second, Plaintiff's Complaint sufficiently establishes that Defendants used the protected mark "in commerce." "In commerce" is construed broadly to include "all commerce which may be lawfully regulated by Congress." 15 U.S.C. § 1127. The Complaint establishes Plaintiff's participation in interstate commerce in the Washington Metropolitan area, *see, e.g.,* ECF No. 2-7, and that the Defendant used the Plaintiff's protected mark in the course of business to solicit money on the Defendant's Facebook page, organization website, and via email. *See* ECF No. 1 at 5, ECF No. 2-6; ECF No. 2-8. *See also Entrepreneur Media, Inc.*, 958 F.Supp.2d at 595 (finding

the "in commerce" requirement met by defendants' use of a protected mark on websites and social media targeting consumers); *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1054 (10th Cir. 2008) (noting that "the Internet is generally an instrumentality of interstate commerce" covered by the Lanham Act).

Third, Plaintiff alleges that Defendants are using Plaintiff's mark without authorization in "the sale, offering for sale, distribution or advertising of goods or services." *Basile Baumann Prost Cole & Assocs. Inc. v. BBP & Assocs. LLC*, 875 F.Supp.2d 511, 525 (D. Md. 2012) (quoting *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012). Plaintiff specifically avers that Defendants used an imitation of Plaintiff's mark in advertising and offering of "goods and services" by using the same name in similar design and layout for the Defendants' annual awards event and fundraiser, *The Living Legends Awards for Service to Humanity*. ECF No. 2-6; ECF No. 2-8; *see also Lamparello v. Fallwell*, 420 F.3d 309, 314 (4th Cir. 2005) ("[T]he term services has been interpreted broadly and so the Latham Act . . . has been applied to defendants furnishing a wide variety of non-commercial public and civic benefits.") (internal citation omitted). Also, Plaintiff alleges that it demanded Defendants stop using the mark, ECF No. 1 at 5, so Defendants' use of the protected mark was unauthorized.

Fourth, Plaintiff alleges and offers evidence that Defendants' use of the mark has confused consumers. *See* ECF No. 1 at 5 ("Doreen Hines has received many telephone calls from supporters who attended the February 27, 2016 event and sponsors requiring an explanation of the two 'The Living Legends Awards for Service to Humanity' programs."); ECF No. 2-6 (email from donor asking "[A]re there two Human Symphony Foundatations [sic]?").

Thus, accepting as true Plaintiff's well-pleaded allegations, Plaintiff owns a valid mark which Defendants used in commerce without Plaintiff's authorization, leading to consumer

7

confusion. *See Basile Baumann Prost Cole & Assocs.*, 875 F.Supp.2d at 525. Default judgment as to Count I is therefore proper.

## 2. Count II: Vicarious Infringement

Plaintiff also alleges vicarious infringement against Defendant Williams (Count II). Vicarious liability can be "imposed in virtually all areas of the law," including trademark infringement. *See Goldstein v. Metropolitan Regional Information Systems, Inc.*, No. CV TDC-15-2400, 2016 WL 4257457 at *5 (D. Md. Aug. 11, 2016) (quoting *Sony Corp v. Universal City Studios*, 464 U.S. 417, 435 (1984)). To establish vicarious liability, a plaintiff must show the defendant "(1) had the right and ability to supervise the infringing activity; and (2) had a direct financial interest in the infringing activity." *Goldstein*, 2016 WL 4257457 at *5 (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262–63 (9th Cir. 1996). A direct financial interest arises where the infringing activity is a "draw" for customers and significant financial benefits "flow directly" from the infringing activity that the defendant helps to facilitate. *Fonovisa*, 76 F.3d at 263-64. "For example, vicarious liability can exist against a landlord who charges rent to vendors at an event where pirated music was sold, *Fonovisa*, 76 F.3d at 263, and against the owner of a chain of department stores at which counterfeit recordings were sold by a concessionaire, *Shapiro, Bernstein and Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)." *Goldstein,* 2016 WL 4257457 at *5.

Plaintiff's allegations meet this standard. Plaintiff has plausibly averred that Defendant Williams, in his capacity as Chair of the Board of Directors and the Artistic Director of Human Symphony Foundation, retains the right and ability to control Human Symphony's infringing use of the name *The Living Legends Awards for Service to Humanity*. *See* ECF No. 1 at 8; ECF No. 2-6. Further, Defendant Williams has a direct financial interest in the fundraising activities of

Human Symphony, and Human Symphony solicited donations using the protected mark. *See* ECF No. 2-6; ECF No. 2-8. It is reasonable to conclude that the protected name drew customers to donate to William's organization rather than the rightful owner, Living Legends, particularly in light of the emails Plaintiff received from confused donors. *See* ECF No. 2-8. Plaintiff, therefore, has stated a viable claim for vicarious infringement.

### 3. Count III: Unfair or Deceptive Trade Practices

Finally, Plaintiff asserts unfair or deceptive trade practices under Maryland Commercial Law § 13-301 against all Defendants (Count III). Section 13–303 of the Maryland Code, Commercial Law Article provides that "[a] person may not engage in any unfair or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in" the sale of consumer goods and services. *See* Md.Code Ann., Com. Law § 13–303. Section 13–301 of the Maryland Code, Commercial Law "provides a nonexclusive list 'defining' unfair or deceptive trade practices." *Legg v. Castruccio*, 100 Md. App. 748, 758 (Ct. Sp. App. Md. 1994). This list includes, for example, "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." Md.Code Ann., Com. Law § 13–301(2)(i).

Section 13–303 causes of action, however, are limited to "consumers" purchasing "consumer" goods or services. *See Boatel Indus. v. Hester*, 77 Md. App. 284, 303 (Ct. Sp. App. Md. 1988); *see also Penn–Plax, Inc. v. L. Schultz, Inc.*, 988 F. Supp. 906, 909–11 (D. Md. 1997) (canvassing Maryland cases, observing that three federal courts, in reliance on those cases, have held that only consumers have standing under the CPA, and finally asserting that "there is no competitor standing under the CPA"). The CPA defines "consumers" as purchasers or recipients of "consumer" goods or services, "which are primarily for personal, household, family, or

agricultural purposes." Md. Code Ann., Comm. Law II § 13–101(c)–(d). Plaintiff Living Legends, a corporate not-for-profit entity, is not a "consumer" under the Maryland Consumer Protection Act. Therefore, the CPA affords it no protection and no remedy. *See Boatel Indus.*, 77 Md. App. at 302–04 (holding that plaintiff who purchased boat for commercial purposes had no cause of action under the Act because he was not a consumer). Accordingly, default judgment is denied and Count III is dismissed.

### B. Damages

Plaintiff seeks a permanent injunction, declaratory judgment, monetary award, and attorneys' fees and costs. *See* Proposed Order, ECF No. 21. When determining damages under the Lanham Act, remedies are awarded as needed to "achieve equity between or among the parties." *Seatrax, Inc. v. Sonbeck Intern., Inc.*, 200 F.3d 358, 369 (5th Cir. 2000). *See also Merck Eprova AG v. Brookstone Pharmaceuticals, LLC,* 920 F.Supp.2d 404, 427-434 (S.D. N.Y. 2013) (granting plaintiff actual damages, injunctive relief, and attorneys' fees); *C=Holdings B.V. v. Asiarim Corp.*, 992 F.Supp.2d 223, 248–53 (S.D. N.Y. 2013) (ordering damages, declaratory judgment, injunctive and attorneys' fees ); *QS Wholesale, Inc. v. World Marketing, Inc.,* No. SA-12-CV-0451-DOC, 2014 WL 12586120 at *13, *16 (S.D. Ca. Jan. 7, 2014) (awarding actual damages, attorney's fees and costs, and injunctive relief).

#### 1. Permanent Injunction

"A district court has authority under the Lanham Act to grant injunctive relief to prevent further violations of a plaintiff's trademark rights." *Innovative Value Corp. v. Bluestone Financial, LLC*, No. DKC 2009–0111, 2009 WL 3348231, at *2 (D. Md. Oct.15, 2009) (citing 15 U.S.C. § 1116); *see FleetPride, Inc. v. Fleet Care Tire & Truck Serv.*, LLC, No. CA 4:10–2288–RBH–SVH, 2011 WL 442051, at *3 (D.S.C. Jan.19, 2011), *report and recommendation*

*adopted as modified*, 2011 WL 533699 (D.S.C. Feb.8, 2011). Also, a court may grant an injunction in a default judgment action involving trademark infringement. *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC*, 958 F.Supp.2d 588, 596 (D. Md. 2013); *FleetPride*, 2011 WL 442051, at *3. According to well-established principles of equity, permanent injunctive relief is appropriate where the plaintiff shows: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006); *see Innovative Value Corp.*, 2009 WL 3348231, at *2; *O.C. Seacrets, Inc., v. Caribbean Secrets LLC*, 2012 WL 4076166, at *5 (D. Md. Sept. 10, 2012).

With regard to the first factor, Plaintiff alleges that it has suffered irreparable harm from donors mistakenly associating Defendants' event with Plaintiff's registered trademark. ECF No. 1 at 4–5. Plaintiff established that Defendant infringed Plaintiff's trademark, as discussed *supra*, and "trademark injuries are considered irreparable." *See FleetPride*, 2011 WL 442051, at *3; see also *Fairbanks Capital Corp. v. Kenney*, 303 F. Supp. 2d 583, 590 (D. Md. 2003) ("The irreparable harm to a plaintiff trademark owner arising from the conduct of an infringer is enormous, immediate, and presumed in law."); *Toolchex, Inc. v. Trainor*, No. 3:08–CV–236, 2009 WL 2244486, at *2 (E.D. Va. July 24, 2009) ("'Irreparable injury necessary for injunctive relief regularly follows from trademark infringement.'") (citation omitted). Also, Plaintiff alleged that Defendants' actions "cause[d] confusion among Plaintiff's donors and potential donors," ECF No. 1 at 7, and "damage to a business's reputation and goodwill may fairly be characterized as irreparable in nature." *See Entrepreneur Media, Inc*., 958 F.Supp.2d at 596; *see*

*also FleetPride*, 2011 WL 442051, at *3 (stating that "it is well established that harm to a company's goodwill is considered irreparable.").Thus, Plaintiff has suffered irreparable harm. *See eBay*, 547 U.S. at 391; *Entrepreneur Media, Inc.*, 958 F.Supp.2d at 596; *FleetPride*, 2011 WL 442051, at *3; *Innovative Value Corp.*, 2009 WL 3348231, at *3.

Second, without a permanent injunction, Defendants will likely continue their unlawful use of Plaintiff's trademark. Defendants already refused to stop using the mark upon Plaintiff's request and in violation of this Court's TRO. *See* ECF No. 1 at 7. Where, as here, a defendant continues to infringe upon a mark after a plaintiff issues a cease-and-desist letter, and defendant does not enter its appearance or otherwise participate in the litigation, "further infringement is a continuing threat, making remedies at law insufficient to compensate for Plaintiff['s] injuries." *Innovative Value Corp.*, 2009 WL 3348231, at *3; *see also Entrepreneur Media, Inc.*, 958 F.Supp.2d at 596 (finding "[t]he corporate Defendants' utter lack of response signals a threat of continued infringement."). "[R]emedies available at law, such as monetary damages, are inadequate to compensate" for Defendants' trademark infringement. *eBay*, 547 U.S. at 391. *See also Toolchex*, 2009 WL 2244486, at *2 ("Damages to reputation and goodwill are not items that are easily measured by a legal calculation of damages.").

Additionally, "the balance of hardships clearly tips in favor of [Plaintiff]." *FleetPride*, 2011 WL 442051, at *4. Defendants have not established any right "to operate such a similarly-named business and to hold itself out, through name, signage, or otherwise, as affiliated with [Plaintiff]," and Defendants are "profiting unjustly thereby." *Id.* Indeed, "Defendant Human Symphony Foundation continued to use the same names, logos, services and methods of operation as [Plaintiff and] . . . has deliberately solicited funding from the same donors with the name The Living Legends Awards for Service to Humanity." *See* ECF No. 1 at 5.

Finally, a permanent injunction is in the public interest to prevent confusion. *See Toolchex, Inc. v. Trainor*, No. 3:08–CV–236, 2009 WL 2244486, at *3 (E.D. Va. July 24, 2009). "There is greater public benefit in securing the integrity of Plaintiff['s] mark than in allowing Defendant[s] to continue to use the mark in violation of Plaintiff['s] rights." *See Innovative Value Corp.*, 2009 WL 3348231, at *3. Therefore, the Court will grant the requested injunctive relief.

### 2. Declaratory Judgment

Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Plaintiff is the rightful owner of the "Living Legends Awards Service to Humanity, Inc." and that Defendants' use of the term or similar terms infringes upon Plaintiff's federally protected trademark. *See* ECF No. 20. The Declaratory Judgment Act allows a court to "declare the rights and other legal relations of any interested party seeking such declaration," provided that the case presents an "actual controversy within its jurisdiction." *See* 28 U.S.C. § 2201(a); *accord Hogs and Heroes Foundation Inc. v. Heroes, Inc.*, 202 F.Supp.3d 490, 494 (D. Md. 2016) (quoting *Volvo Const. Equip N. America, Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) ("A court may exercise jurisdiction over a declaratory judgment action when: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.")). Thus, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation

omitted). "[A] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993). A declaratory action is appropriate where "relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994).

The facts alleged in the Complaint establish an actual controversy. *See* ECF No. 1. While Plaintiff is the lawful owner of "The Living Legends Awards Service to Humanity," the Defendants have used the mark to advertise and seek donations for Defendants' events. *See* ECF No. 8-1 at 4–5. Declaratory action will help to settle this dispute and provide the Plaintiff relief from Defendants' continued illegal use of the Plaintiff's trademark. Accordingly, the Court will grant the requested declaratory relief. Defendants' past, present, and future use of *The Living Legends Awards Service to Humanity*, or similar terms, infringes upon Plaintiff's federally protected trademark and registered name.

### 3. Monetary Damages

When plaintiff's well pleaded complaint sufficiently alleges the defendant's violation of 15 U.S.C §1125(a), the plaintiff may recover defendants' profits and any damages sustained. *See* 15 U.S.C. § 1117. "[T]he Court must ensure that an award of statutory damages made under the Lanham Act is both equitable and substantial enough to advance the Act's goal of discouraging trademark infringement." *Chanel, Inc., v. Banks*, No. CV WDQ-09-843, 2011 WL 121700, at *10 (D. Md. 2011). Where the "defendant's failure to respond to the lawsuit . . . deprived plaintiff of information regarding plaintiff's actual damages or defendant's profits," damages must not be exact, but a reasonable basis for computation must exist. *Chanel*, 2011 WL 121700

at *9 – *10. ("[A] statutory damages award should bear[ ] some relation to what a plaintiff may have gotten based on an actual damages calculation whenever possible.") (internal citation omitted). Here, the Plaintiff requests damages of $500 for Defendants' violation of Plaintiff's trademark, plus interest at the legal rate until the judgment is satisfied. *See* ECF No. 21 at 2. The Plaintiff does not explain how damages were calculated, or if this is a reasonable approximation of Defendants' profits. *Id.* Without additional information, such as approximate donations or estimated funding lost by the Plaintiff because of Defendants' misconduct, it is impossible to know what actual damages Plaintiff incurred. Plaintiff may supplement with additional supporting documentation on claimed money damages within 21 days from the issuance of the accompanying order.

4. **Attorney's Fees and Costs**

The Court also finds that Plaintiff is entitled to reasonable attorney's fees and costs under 15 U.S.C. § 1117(a). The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "Exceptional" cases are limited to those in which the district court exercises its discretion and determines "in light of the totality of the circumstances,"

> (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable, (2) the non-prevailing party has litigated the case in an unreasonable manner, or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

*Georgia-Pacific Consumer Prod. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015) (internal citations and quotations omitted). The court may find a case exceptional when "there does not appear to be any objectively reasonable position to justify defendant's actions" and the "defendant has not litigated th[e] case in a reasonable manner considering that it has not

15

responded at all . . . . there is a particular need to deter defendant in light of defendant's disregard for this litigation, as well as a need to compensate plaintiffs for defendant's willful infringement." *Hilton Worldwide, Inc. v. Global Advertising, Inc.*, No. 1:15-CV-1001, 2016 WL 8223436 at *9 (E.D. Va. Apr. 8, 2016) (granting default judgment and attorney's fees for trademark infringement and violations).

District courts maintain broad discretion to determine legal fees, but the award must nonetheless be *reasonable. See, e.g., Mercer v. Duke Univ.*, 401 F.3d 199, 211 (4th Cir.2005) ("We have made it clear that the determination of a reasonable attorney's fee award is a decision for the district court to make, and the district court has broad discretion in that regard...."); *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir.1995) ("It is for the district court in the first instance to calculate an appropriate award of attorney's fees."). In addition, Maryland Local Rule 109 requires "[a]ny motion requesting the award of attorneys' fees must be supported by a memorandum" that complies with the compensable time and hourly rate guidelines provided in Loc. R. Appendix B. *See* Loc. R. 109(2)(b); Loc. R. app B. Plaintiff has not provided sufficient information for the court to assess the reasonableness of the requested $3,500 fee. Plaintiff may supplement with supporting documentation for such fees and costs within 21 days from the issuance of the accompanying order.

### III.     CONCLUSION

In sum, the Court GRANTS IN PART Plaintiff's Motion for Default Judgment as to its claims of trademark infringement and vicarious infringement (Counts I and II) and DENIES its unfair or deceptive trade practices claim under Maryland Commercial Law § 13-301 and dismisses Count III. Additionally, the Court GRANTS Plaintiff's request for a permanent injunction and declaratory judgment against Defendants. As to monetary damages and attorneys'

16

fees, the Plaintiff will be afforded an opportunity to supplement its motion consistent with this opinion. A separate Order follows.

_____/s/_____  
PAULA XINIS  
United States District Judge